IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CLARENCE ANDERSON, III,        )
                               )
        Plaintiff,             )
                               )
v.                             )   CASE NO. 2:23-cv-204-MHT-JTA
                               )
FRANK KENDALL, et al.,         )
                               )
        Defendant.             )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is the Motion to Dismiss filed by all Defendants/Respondents. (Doc. No. 16.) For the reasons stated below, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that the motion be GRANTED; that Respondents Charles L. Plummer, Mark C. Nowland, and Brian L. Mizer be DISMISSED from this action, and that this action be DISMISSED with prejudice.

## I.    JURISDICTION

This action has been referred to the undersigned "pursuant to 28 U.S.C. § 636 ... for consideration and disposition or recommendation on all pretrial matters as may be appropriate." (Doc. No. 5.) This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue and personal jurisdiction are uncontested, and the undersigned finds sufficient grounds for both in this district and division.

## II.    STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and

construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In addition, the court must consider a plaintiff's *pro se* status when evaluating a complaint. The Supreme Court has declared, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). Indeed, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## III.   FACTS[1] AND PROCEDURAL HISTORY[2]

A.   The Proceedings Before the Military Courts

Plaintiff Clarence Anderson, III, was once a major in the United States Air Force. (Doc. No. 1-1 at 3.) On April 22, 2015, a general court martial convicted Anderson of numerous charges,[3] including the September 1, 2013 sexual assault[4] of his former wife,

---

[1] In general, the facts as stated in the petition are presumed to be true for purposes of this Recommendation on the motion to dismiss, and those facts are presented in the light most favorable to Anderson. *Ashcroft*, 556 U.S. at 678. Where Anderson has attached documentary evidence to his petition, the material in the attached evidence controls wherever it conflicts with the statements in the petition. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.... The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself.")

[2] Where appropriate, in setting forth the procedural history, the court takes judicial notice of the records of other courts. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."); *see also Lobo v. Celebrity Cruises, Inc*., 704 F.3d 882, 892 (11th Cir. 2013) (taking judicial notice of the existence of a final judgment for purposes of a *res judicata* analysis). *But see Lietzke v. City of Montgomery, AL*, No. 2:20-CV-1031-WKW-JTA, 2023 WL 5034148, at *14 (M.D. Ala. May 3, 2023) (relying on *Jones* in declining to take judicial notice of the contents of the Book of Life as substantive factual evidence against the defendants to justify Plaintiff's requested imposition of eternal punishment in the Lake of Fire), *report and recommendation adopted*, No. 2:20-CV-1031-WKW, 2023 WL 5022260 (M.D. Ala. Aug. 7, 2023).

[3] *See United States v. Anderson*, No. ACM 39023, 2017 WL 2422844, at *1 (A.F. Ct. Crim. App. May 31, 2017):

> A military judge sitting as a general court-martial convicted [Anderson], contrary to his pleas, of sexual assault, abusive sexual contact, aggravated assault, assault consummated by battery, kidnapping, and wrongfully communicating a threat—in violation of Articles 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 934.

[4] In addition to the September 1, 2013 sexual assault, the United States Air Force Court of Criminal Appeals noted the following:

K.A, with whom he was (or would be)[5] engaged in a contentious divorce and custody battle.[6] (Doc. No. 1 at 4 ¶ 1; *id.* at 10 ¶¶ 21-22.) Anderson was sentenced to confinement for forty-two months and discharged from the Air Force. (Doc. No. 1-2 at 2.) He is no longer imprisoned. (Doc. No. 1 at 1.)

At some point prior to Anderson's military trial, K.A. began a romantic relationship with J.M., who taught in the same school system where K.A. was employed as a special

---

In November of 2012 while in Florida, Appellant put his hand over KA's mouth and nose, confined her in a bathroom, and told her that he knew how to kill her and blame it on post-traumatic stress disorder. KA's then–12-year-old son witnessed portions of this altercation and took photographs of KA. When KA spoke with the police, they took additional photographs of her. Appellant filed for divorce shortly after this incident, but, after going through mediation, the couple reconciled.

*United States v. Anderson*, No. ACM 39023, 2017 WL 2422844, at ** 1-2 (A.F. Ct. Crim. App. May 31, 2017).

Thereafter, according to the evidence before the military tribunal, in January 2013, Anderson sent K.A. text messages admitting to "put[ting] [his] hands on" her. *Id.* at * 2. Anderson blamed K.A. for his actions because she had threatened to change the locks and had threatened to throw his uniforms on the lawn. (*Id.* at * 2 ("You started it and then I got the best of you. You have to take that loss and not run to the police two days later.... I don't like the idea I put my hands on you or that you want 1/2 my retirement and house.... And though I wish the night of Sat, 24 Nov would have never happened the [ ] way we were heading it was bound to happen but you started and I got the best of you. What happened in AL was in AL. Nothing happened in the truck on the way home. What happened in FL was what happened in FL and if I had to go back I would have done the same thing because you started it and thought it was ok to disrespect me.").

[5] From the petition, it is not clear whether the parties were actively in the process of divorcing in September 2013. Anderson accuses K.A. of fabricating the assault allegations to obtain an advantage in the couple's contentious divorce and child custody proceedings.

[6] The United States Air Force Court of Criminal Appeals detailed the evidence of the parties' relationship, which included allegations that Anderson physically abused K.A. as far back as 2009. *United States v. Anderson*, No. ACM 39023, 2017 WL 2422844, at *1 (A.F. Ct. Crim. App. May 31, 2017).

4

education teacher. (Doc. No. 1-6 at 104-05.) It is undisputed that K.A. and J.M. first met and began their *professional* relationship in the course of their employment in August 2013, just prior to the start of the school year. (*Id.* at 105.) According to Anderson, at a pretrial hearing before the military tribunal, K.A. and J.M. testified that their sexual relationship did not begin until K.A. was divorced from Anderson, roughly six to eight months after Anderson assaulted K.A. (Doc. No. 1 at 11 ¶ 23.) Therefore, the military judge ruled that evidence of the romantic relationship between K.A. and J.M. was irrelevant, immaterial, and inadmissible in Anderson's trial for the September 1, 2013 assault on K.M. (*Id.*); *United States v. Anderson*, 2017 WL 2422844, at *2 (A.F. Ct. Crim. App. May 31, 2017) (discussing the military judge's pretrial ruling to exclude the evidence and holding that the ruling was decided on "a logical, reasonable basis and not an abuse of discretion").

One month after Anderson's military trial, Anderson's mother recorded two telephone calls with J.M. (Doc. No. 1 at 12 ¶ 24.) According to Anderson,[7] in those telephone calls, J.M. indicated[8] that he began a sexual relationship with K.A. "much sooner

---

[7] Anderson did not submit copies of the alleged recordings nor transcripts of them to this court. For purposes of this Recommendation, the undersigned relies on Anderson's characterization of the contents of those recordings.

[8] At one point in his petition, Anderson stated that, in J.M.'s phone calls to Anderson's mother, J.M. "admitted" to (or "conced[ed] that") his "sexual relationship with K.A. had started much sooner than what he and K.A. had claimed under oath during the pretrial ... hearing." (Doc. No. 1 at 12 ¶ 24, 13 ¶ 28.) Elsewhere, Anderson states that J.M. admitted in those phone conversations merely that "the relationship" began in August 2013, or merely that he was "in a relationship" with K.A. in August 2013. (Doc. No. 1 at 15 ¶ 33.) Yet elsewhere, Anderson states merely that it can be "inferred" from J.M.'s statements in the recorded phone conversations that J.M.'s *sexual* relationship with K.A. began in August 2013. (Doc. No. 1 at 19 ¶ 44; *see also* Doc. No. 1-3 at 7, Doc. No. 1-7 at 11; Doc. No. 1-8 at 12.) Without the recordings or transcripts thereof, it is not possible to determine whether J.M.'s unsworn statements in his phone call to Anderson's mother were inconsistent with his and K.A.'s testimony under oath. It is not necessary to definitively

5

than what he and K.A. had claimed" at the pretrial hearing. (*Id.*) Anderson alleges that J.M.'s statements in the phone calls indicated that the relationship began "as early as one month before the" September 1, 2013 date of Anderson's attack on K.A., while K.A. and Anderson were still married. (*Id.*) During the phone calls, J.M. also stated that, before the trial, K.A.'s mother had given him $10,000. (*Id.*)

On September 15, 2015, Anderson moved for a post-trial hearing to investigate the circumstances of the payment to J.M. from K.A.'s mother. (*Id.* at ¶ 25); *United States v. Anderson*, 2017 WL 2422844, at *2. A post-trial hearing was held at which K.A. testified that her mother gave J.M. $100,000[9] to renovate his house so that K.A. and her children could move in with him. (Doc. No. 1 at 12 at ¶ 26.) J.M. testified that he began dating K.A. by November or December of 2013. (*Id.* at 13 ¶ 28.) The United States Air Force Court of Criminal Appeals summarized the military judge's conclusions as follows:

> The military judge concluded that [K.A.]'s mother provided the money "for the renovations to [J.M.'s] house for the purpose of ensuring that her daughter and grandchildren were going to live in a suitable house with sufficient living space," and not to alter [J.M.]'s testimony. Furthermore, the military judge determined that [J.M.] "accepted the payments for the renovation in preparation to marry [K.A.] and ultimately merge their families together," and not to alter his testimony. Therefore, the military judge reasonably concluded that the court-martial "would not probably produce a

---

resolve the alleged inconsistency here. Factual ambiguity in Anderson's petition will be construed in the light most favorable to him when assessing the pending motion to dismiss.

[9] No explanation is provided regarding the discrepancy between J.M.'s alleged unsworn statement to Anderson's mother that he had received $10,000.00 from K.A.'s mother, and K.A.'s sworn testimony that the amount was instead "close to $100,000.00." (Doc. No. 1-6 at 33.)  It does not appear that J.M. received the $100,000 sum from K.A.'s mother all at once. According to K.A.'s mother's sworn testimony, she provided J.M. money in amounts of several thousand dollars at a time, according to what his contractor required. (Doc. No. 1-6 at 82-83.)

substantially more favorable result for the accused" had this information
been presented.

*United States v. Anderson*, 2017 WL 2422844, at *2 n.4.

The United States Air Force Court of Criminal Appeals further detailed the post-

trial proceedings as follows:

> The post-trial Article 39(a) session was held to address this specific matter
> [of the payment from K.A.'s mother to J.M.]. However, after addressing the
> matter in the convening authority's order, the Defense requested permission
> to again question [K.A.] and [J.M.] about their sexual relationship. The
> Defense initially attempted to connect this to the payments, but eventually
> changed course and argued that the military judge had authority to address
> the sexual relationship under Rules for Courts–Martial (R.C.M.) 1102 and
> 1210 and Article 39(a), UCMJ. The Defense also asked the military judge to
> order a new trial. The military judge determined that, since the hearing
> occurred after authentication, he was limited to examining only the matters
> the convening authority had directed the hearing to address.

*United States v. Anderson*, 2017 WL 2422844, at *4.

After the post-trial hearing, Anderson moved for a second post-trial hearing[10] on

grounds that J.M. provided an unsworn letter clarifying that he and K.A. began a sexual

---

[10] The United States Air Force Court of Criminal Appeals noted:

> In addition to requesting a second post-trial Article 39(a) from the convening
> authority, Appellant also petitioned The Judge Advocate General of the Air Force
> for a new trial based on the matters Appellant sought to address at the post-trial
> hearing. That request was forwarded to this court. *See* Rule for Courts–Martial
> 1210(e). Appellant submitted pleadings and documentary evidence in support of
> the petition, and we heard oral arguments on this issue. We ultimately denied the
> petition for a new trial, *United States v. Anderson*, Misc. Dkt. No. 2016–17 (31 May
> 2017) (unpub. op.), but we are nonetheless convinced that Appellant has been
> afforded a "forum in which to make his case." *See United States v. Meghdadi*, 60
> M.J. 438, 445 (C.A.A.F. 2005).

*United States v. Anderson*, 2017 WL 2422844, at *6 n.6.

relationship in "roughly November 2013." (*Id*. at 14 ¶ 33); *United States v. Anderson*, 2017 WL 2422844, at *2. Anderson's motion for a second post-trial hearing was denied on grounds that the letter still did not demonstrate that K.A. and J.M. had a sexual relationship in September 2013 when K.A. reported Anderson's crimes. (*Id*.); *United States v. Anderson*, 2017 WL 2422844, at *2.

Anderson appealed his court martial, challenging the decision, the outcome of the first post-trial hearing, and the denial of the second post-trial hearing, among other issues. *Id.* at * 1. On May 17, 2017, the United States Air Force Court of Criminal Appeals affirmed the trial court's findings and sentence. *Id.* at **1, 8. Subsequently, Anderson filed a petition for review before the United States Court of Appeals for the Armed Forces, which denied review on August 18, 2017. *United States v. Anderson*, 76 M.J. 461 (C.A.A.F. 2017). The United States Court of Appeals for the Armed Forces also entered orders denying a second petition for a new trial and denying reconsideration of the denial of the second petition for new trial. *United States v. Anderson*, 77 M.J. 61 (C.A.A.F. 2017); *United States v. Anderson*, 77 M.J. 194 (C.A.A.F. 2018).

B.   The Mandamus Action Before the United States District Court for the Eastern District of Virginia ("*Anderson I*")

On December 23, 2018, Anderson, acting through an attorney, filed an action in the United States District Court for the Eastern District of Virginia seeking mandamus review of the court martial and a new trial. *Anderson v. Wilson* ("*Anderson I*"), Case No. 1:18-cv-1590-AJT-MSN (Doc. No. 1, Dec. 23, 2018 Petition of Clarence Anderson) (E.D. Va.). For two reasons, the court found that Anderson was not entitled to a writ of mandamus and

8

granted the defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and dismissed the case. First, the court found that mandamus was unwarranted because Anderson "ha[d] not shown that mandamus [wa]s the only adequate means of relief available to him." *Anderson I* (Doc. No. 14, May 2, 2019 Order, at 11). Second, the court found that

> the facts alleged in the Petition, even when construed in the light most favorable to Petitioner, fail to make plausible that his right to mandamus relief is clear and indisputable, *viz.*, that the military appellate courts did not fully and fairly consider the issues he has raised in this action.

*Id*. at 12.

More specifically, the court found that the "two issues [Anderson] raise[d] for relief ..., the payment by K.A.'s mother to J.M. and the timing of K.A.'s relationship with J.M., were briefed before the" United States Air Force Court of Criminal Appeals and the United States Court of Appeals for the Armed Forces. *Id*. at 13. The court found that those two military appellate courts "fully and fairly considered" those claims and, thus, Anderson "ha[d] failed to allege facts that make plausible his claim to mandamus relief is clear and indisputable." *Id*. at 14.

The court granted the motion to dismiss and dismissed the action "pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim," but did not state whether the dismissal was with or without prejudice. *Id*. at 14.

C.   The § 1331 Action Before the United States District Court for the Eastern District of Virginia ("*Anderson II*")

On September 3, 2019, Anderson filed a second action in the United States District Court for the Eastern District of Virginia, this time a collateral attack on his court martial

under 28 U.S.C. § 1331. *Anderson v. Donovan* ("*Anderson II*"), Case No. 1:19-cv-1139-AJT-MSN (Doc. No. 1, September 3, 2019 Petition of Clarence Anderson) (E.D. Va.). He named the following as Defendants: (1) Barbara Barrett, Secretary of the Air Force;[11] (2) Lieutenant General Jeffrey A. Rockwell, Judge Advocate General of the United States Air Force; and (3) Lieutenant General Mark Nowland, Deputy Chief of Staff for Operations, Plans, and Requirements United States Air Force. Anderson was represented by counsel in *Anderson II*.

In his *Anderson II* petition, he raised the following issues:

1.  The military courts did not give Anderson full and fair consideration.

2.  The military court judgment was void.

3.  In response to a Congressional inquiry, the respondents reneged on a promise to Congress to investigate the matter further.

4.  The respondents violated their Brady obligations by failing to disclose the memorandum containing the details of their promise to investigate further.

*Anderson II* (Doc. No. 1, September 3, 2019 Petition of Clarence Anderson).

On February 27, 2020, the court[12] entered an Order and Judgment. *Anderson II* (Docs. No. 23, 24).  In the February 27, 2020 Order, the court determined that Anderson's claims were not barred by any *res judicata* or collateral estoppel effect of the dismissal of

---

[11] Anderson originally named Matthew Donovan, Acting Secretary United States Air Force, as a defendant. On October 18, 2019, Barbara Barrett was sworn in as Secretary of the Air Force and was automatically substituted as a defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See Anderson II* (Doc. No. 32, Respondents' April 20, 2020 Motion for Enlargement of Time, at 1 n.1).

[12] United States District Judge Anthony J. Trenga presided over both actions Anderson filed in the United States District Court for the Eastern District of Virginia.

Anderson's mandamus action before the same court. *Anderson II* (Doc. No. 23, February 27, 2020 Order, at 10-15).

Turning to merits of the petition, the court granted the respondents' motions to dismiss and dismissed the case on the merits with prejudice. (*Id.* at 15-17.) Specifically, the court reasoned:

Respondents finally argue that Petitioner has failed to state a claim upon which relief can be granted, an argument which, for the reasons explained above, the Court considers *de novo*. Based on the Court's review of the Petition, there is nothing materially different in the allegations in this action than in the previous Mandamus Action. Here, as there, Petitioner focuses on the failure to specifically consider his claim that his ex-wife perjured herself as to the timing of when her relationship with another man began, in particular, that it began prior to her reporting of sexual assault in mid-September 2013, but Petitioner does not allege where he sought relief based on that contention. In fact, neither of his requests for post-trial Article 39(a) hearings proffered any evidence that K.A. and J.M.'s relationship pre-dated the report of sexual assault. Rather, his requests for relief based on the timing of K.A.'s relationship with J.M. were based only on the inconsistencies between K.A.'s original testimony at the February 2015 pretrial hearing—that her relationship with J.M. began approximately 6 to 8 months after she reported Petitioner to the authorities in September 2013—and her and J.M's subsequent testimony that the relationship began by November 2013, even though he now claims he received the information of an earlier relationship in the same May 2015 phone calls in which he received information that he did present in support of his requests for an Article 39(a) hearing. *See* [Doc. No. 14-3] at 1; [Doc. No. 14-4] at 1. Not until Petitioner's Mandamus Action, [Doc. No. 1] ¶ 19(a)—and subsequently, this action—did he specifically allege as the basis for relief that he had not been given the opportunity to present evidence that the relationship began before the reported sexual assault, evidence which was never considered by any military tribunal because Petitioner never presented it.

Petitioner has failed to allege facts that make plausible that he was denied a full and fair opportunity to defend himself within the military justice system based on the claims and evidence he presented during those proceedings because the military courts reviewed this evidence, as presented by Petitioner, and found that it would not have changed the outcome of the proceedings, because the relationship still post-dated the sexual assault K.A.

11

reported. [*Anderson v. United States*, No. MC 2016-17, 2017 WL 2422847, at **3-4 (A.F. Ct. Crim. App. May 31, 2017); *United States v. Anderson*, No. ACM 39023, 2017 WL 2422844, at *6 (A.F. Ct. Crim. App. May 31, 2017)]. His claim that the military courts should consider K.A.'s relationship with J.M. was repeatedly "briefed and argued." *See Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986). Petitioner never presented within the military proceedings his specific claim advanced here as the basis for relief—that K.A.'s relationship with J.M. pre-dated K.A.'s accusations against him. [13] Petitioner was not prevented from presenting that claim for consideration and cannot now claim that he was denied "full and fair consideration" with respect to K.A.'s relationship with J.M. based on evidence and contentions he never presented to the military courts.

Based on its review of the Petition, the Court concludes that the Petitioner has failed to allege facts, which when viewed most favorably to the Petitioner, make plausible his claim that he did not have a full and fair opportunity to present his issues and defenses, or that the military courts did not give "full and fair consideration" to the evidence and defenses he presented during those proceedings.

### III. CONCLUSION

For the above reasons, it is hereby

ORDERED that Respondents' Motion to Dismiss [Doc. No. 13] be, and the same hereby is, GRANTED: and it is further

ORDERED that this action be, and the same hereby is, DISMISSED with prejudice.

The Clerk is directed to forward a copy of this Order to all counsel or record and to enter judgment in Respondents' favor pursuant to Fed. R. Civ. P. 58.

*Anderson II* (Doc. No. 23, February 27, 2020 Order, at 15-17).

---

[13] In post-judgment motions filed in *Anderson II*, Anderson argued that the court erred in this finding. He alleged that, in his post-trial hearings and appeals, he did introduce or attempt to introduce into evidence the contents of the phone calls that he claims are evidence that K.A. and J.M. began their romantic or sexual relationship before K.A. reported the sexual assault in September 2013. *Anderson II* (Docs. No. 30 at 5-8, 39, 49, 61). Anderson also raised other issues in post-judgment motions in *Anderson II*, such as ineffective assistance of counsel. Those motions have been denied. *Anderson II* (Docs. No. 38, 41, 54, 63).

On February 27, 2020, the Clerk of the Court entered a separate judgment pursuant to Rule 58(b)(1)(c) of the Federal Rules of Civil Procedure, as follows:

> Pursuant to the order of this Court entered on February 27, 2020 and in accordance with Federal Rules of Civil Procedure 58, JUDGMENT is hereby entered in favor of the Respondents, Honorable Matthew Donovan, Lt. Gen. Jeffrey A. Rockwell and Lt. Gen. Mark Nowland and against, Petitioner, Clarence Anderson, III.

*Anderson II* (Doc. No. 24).

In addition to appealing the judgment, Anderson submitted four post-judgment motions in *Anderson II*, the first on April 8, 2020, and the fourth on August 22, 2022. *Anderson II* (Docs. No. 30, 39, 49, 61). Those motions have all been denied. *Anderson II* (Docs. No. 38, 41, 54, 63).

On September 11, 2020, Anderson appealed the judgment and the denial of two post-judgment motions. *Anderson II* (Doc. No. 42, September 11, 2020 Notice of Appeal); *Anderson v. Rockwell*, No. 20-1972, 849 F. App'x 432, 433 (4th Cir. June 11, 2021) (listing the orders from which Anderson appealed). The United States Court of Appeals for the Fourth Circuit dismissed the appeal of the February 27, 2020 judgment on grounds that Anderson did not timely file a notice of appeal from that order. *Id*. at 433-34. The Court of Appeals affirmed the June 16, 2020 and July 13, 2020 orders of the district court, in which the district court denied Anderson's first two post-judgment motions. *Id*. The Fourth Circuit issued its mandate on August 3, 2021. *Anderson II* (Doc. No. 51.)

On February 4, 2022, Anderson filed a notice of appeal from the denial of his third motion for reconsideration. *Anderson II* (Doc. No. 55.) The Court of Appeals affirmed after "review[ing] the record and conclud[ing] that the district court did not abuse its discretion

13

in denying relief." *Anderson v. Rockwell*, No. 22-1126, 2022 WL 2901720, at *1 (4th Cir. July 22, 2022).

On November 20, 2023, Anderson filed a notice of appeal from the denial of his fourth motion for reconsideration. *Anderson II* (Doc. No. 64.) That appeal is pending.

D.     The Proceedings Before This Court

On April 10, 2023, Anderson filed a petition for declaratory and injunctive relief, again attempting a collateral attack on his court martial under 28 U.S.C. § 1331. (Doc. No. 1.) Anderson acknowledges that his petition in this action is "similar" to the petition in *Anderson II*. (Doc. No. 1 at 3.) In fact, his petition is so similar that there appear to be only two differences relevant to the undersigned's analysis in this Recommendation.[14]

First, though Anderson filed his petition against all the same individuals as he named in *Anderson II*, or their successors in office, he also added as a Defendant Brian L.

---

[14] There are other minor differences between the petitions. Those minor differences are not substantive or material in any way that would merit discussion in the analysis in this Recommendation. For instance, Anderson casts aspersions on the finding of the United States District Court for the Eastern District of Virginia in *Anderson II* that, during his military court proceedings, he did not submit evidence that K.A.'s and J.M.'s relationship pre-dated K.A.'s report of sexual assault. (*See, e.g.*, Doc. No. 1 at 3-4.) This court is not an appellate court and will not review the decision of the United States District Court for the Eastern District of Virginia. *See Campbell v. Bennett*, No. 21-13875, 2022 WL 1673113, at *2 (11th Cir. May 26, 2022) ("District courts have original jurisdiction over civil actions arising under the Constitution or laws of the United States. 28 U.S.C. § 1331. But they do not have appellate jurisdiction to review decisions of another district court."). Neither can Anderson obtain review in this court of the Fourth Circuit's affirmance of any of his appeals in *Anderson II*. *Id*. Paragraphs 49 and 50 of the petition in this action (Doc. No. 1 at 21) are new, but their contents make no difference to the undersigned's analysis. Anderson made other minor editorial changes that are inconsequential and will not be listed here.

Mizer, a former civilian Senior Appellate Defense Attorney for the Air Force who worked on Anderson's case and appeals in the military courts.

Second, Anderson adds the following claim for ineffective assistance of counsel:

*Petitioner's Appellate Attorney Ineffectively Presented Respondent's Promise to Congress*

62.   Petitioner's surprise only intensified when he discovered [after the conclusion of his illusory post-trial hearing, that Respondents actually had assured Congress that Petitioner would have a meaningful opportunity to present evidence and raise any motion at the post-trial proceeding. The Air Force Legislative Liaison, Maj Gen Bergeson, speaks on behalf of, and represents the Secretary of the Air Force in the halls of Congress. Thus, when Maj Gen Bergeson promised Rep. Roby that Petitioner would have a meaningful post-trial hearing during which he would be able to raise any motions related to the possible bribery of a key government witness, Maj Gen Bergeson was reflecting the views of Respondent Kendall and his subordinates.[15]]

63.   When the Petitioner discovered the very issues he was prevented from introducing during his post-trial hearing, was previously promised to Congress affirming that he could present them but that correspondence was withheld from his counsel prior to the post-trial hearing, he personally drafted a petition for a new trial based on this newly discovered evidence. Again, see, Appendix 7. Unfortunately, Petitioner's counsel (Mr. Brian Mizer) during his military appeals, failed to follow the rules of the [United States Court of Appeals for the Armed Forces] to appropriately present this newly discovered evidence before that court, and the [United States Court of Appeals for the Armed Forces] failed to investigate the circumstances as to why Petitioner's appellate counsel failed to follow its rules. Most notably, the [United States Court of Appeals for the Armed Forces] also failed to investigate how Petitioner's counsel knew to the day his petition would be rejected by [United States Court of Appeals for the Armed Forces], immediately after the Petitioner questioned his appellate counsel's

---

[15] The bracketed text is identical to text from Anderson's petition in *Anderson II* (Doc. No. 1 at 24 ¶ 59.) Anderson also included a footnote at the end of this bracketed text that was identical to a footnote in his petition in *Anderson II*. That footnote reads: "*See* Jonathan Turley, THE MILITARY POCKET REPUBLIC, 97 Nw. U.L. Rev. l, 83 (explaining that military branches use their legislative liaison offices 'as a direct conduit to Congress')."

ineffectiveness. See <u>Appendix 8</u>, *Petition for Reconsideration to [United States Court of Appeals for the Armed Forces]*.

(Doc. No. 1 at 26-27 (sic) (footnote omitted).)

## IV.   DISCUSSION

In their motion to dismiss, Respondents contend that the Secretary of the Air Force is the only proper defendant to this action and that *res judicata* bars claims that were brought or could have been brought in *Anderson II*. The undersigned agrees.

A.   Dismissal of Respondents Other Than the Secretary of the Air Force

Citing Rule 21 of the Federal Rules of Civil Procedure, Respondents argue that the court should dismiss Lieutenant General Charles L. Plummer, Judge Advocate General of the United States Air Force; and Lieutenant General Mark C. Nowland, Deputy Chief of Staff for Operations, Plans, and Requirements United States Air Force, from this action because they are not proper respondents. Anderson does not specifically address Respondents' argument.

Rule 21 provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed R. Civ. P. 21. "Dropping or adding a party to a lawsuit pursuant to Rule 21 is left to the sound discretion of the trial court." *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045 (11th Cir. 1986) (citing *Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir. 1977), *cert. denied*, 435 U.S. 946 (1978)). When determining whether dropping a party would be "just" under Rule 21, courts generally evaluate whether dismissal of parties would cause substantial prejudice. *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016) (citing *Hartley*

*v. Clark*, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010)). Here, Anderson has not stated any opposition to, nor shown that any prejudice would result from, the dismissal of Plummer and Nowland.  Consequently, those respondents are due to be dismissed pursuant to Rule 21.

Anderson argues that Respondent Brian L. Mizer, Senior Appellate Defense Attorney of the United States Air Force, is named as a respondent because Mizer provided ineffective assistance of counsel in his military appeals. (Doc. No. 20 at 8-9.) However, as Respondents point out, and as Anderson fails to refute in any meaningful way, neither Mizer nor his successor in office is capable of providing the relief Anderson seeks (*i.e.*, a new trial). (Doc. No. 1 at 29 (Anderson's request for relief in the form of a new trial, court costs, and attorneys' fees).) There is no error Mizer committed that this court can order Mizer or his successor in office to correct.

To the extent Anderson purports to assert an ineffective assistance of counsel claim as grounds for a new trial, that claim is properly asserted against the government (or, more specifically, the governmental official who can provide the requested relief), not against Mizer or any successor to his former position as Senior Appellate Defense Counsel for the Air Force. *See*, *e.g.*, *United States v. Knight*, 53 M.J. 340, 340 (C.A.A.F. 2000); *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977). Though Anderson asserts that Mizer failed to represent him adequately, he asserts no claim against Mizer, he demands no relief from Mizer, and he seeks no relief that Mizer could provide. *See* Charles Allan Wright and Arthur R. Miller, 7 Fed. Prac. & Proc. Civ. § 1683 (3d ed.) (recognizing that a defendant

may be dismissed pursuant to Rule 21 of the Federal Rules of Civil Procedure where the plaintiff demands no relief from that defendant or states no claim against that defendant).

Accordingly, all Respondents other than the Secretary of the Air Force are due to be dismissed from this action pursuant to Rule 21.

B.   Applicability of *Res Judicata*

*Res judicata*, or claim preclusion, "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). It applies when four elements are met: "(1) there is a [prior] final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id*. at 1238.

As for the first element of *res judicata*, Respondents contend that the February 27, 2020 final judgment in *Anderson II* was a final judgment on the merits. Anderson argues that it was not. The undersigned agrees with Respondents. In *Anderson II*, the United States District Court for the Eastern District of Virginia (1) granted the respondents' motions to dismiss pursuant to Rule 12(b)(6) and (2) expressly dismissed the action "with prejudice" on grounds that the complaint failed to state a claim upon which relief could be granted. *Anderson II*, (Doc. No. 23, February 27, 2020 Order, at 15-17). As the court said in that same order: "Dismissals under Rule 12(b)(6) are, unless otherwise noted, with prejudice,

and with prejudice dismissals are typically considered to be 'on the merits.'"[16] (*Id*. at 12.) In *Anderson II*, though, the court went farther and specifically noted that dismissal *was* "with prejudice." (*Id*. at 17.) "The phrases 'with prejudice' and 'on the merits' are synonymous terms, both of which invoke the doctrine of claim preclusion." *Citibank, N.A. v. Data Lease Fin. Corp*., 904 F.2d 1498, 1501 (11th Cir. 1990). Thus, "dismissal of a complaint with prejudice satisfies the requirement that there be a judgment on the merits." *Id*.; *see also Lobo v. Celebrity Cruises, Inc*., 704 F.3d 882, 893 (11th Cir. 2013) ("We ... conclude that the September 10, 2009, order was an adjudication on the merits because the order was a Rule 12(b)(6) dismissal with prejudice."); *Hall v. Tower Land & Inv. Co*., 512 F.2d 481, 483 (5th Cir. 1975)[17] ("[G]ranting defendant's motion to dismiss for plaintiff's failure to state a claim upon which relief can be granted operates as an adjudication on the merits."). The first element of *res judicata* is satisfied.

As for the second element of *res judicata*, Anderson concedes that the United States District Court for the Eastern District of Virginia was competent to exercise jurisdiction over his petition and enter the judgment in *Anderson II*. (Doc. No. 20 at 10.) The second element of *res judicata* is satisfied.

---

[16] As the court noted in *Anderson II*, there are exceptions to this general rule, but Anderson has not demonstrated that any such exception applies here.

[17] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

As for the third element of *res judicata*, Anderson argues in his petition that the presence of Mizer as a respondent defeats the operation of *res judicata*. (Doc. No. 1 at 4.) He is incorrect. As explained in Section IV.A. of this Recommendation, Mizer is subject to dismissal under Rule 21 of the Federal Rules of Civil Procedure. Further, in his response to the motion to dismiss, Anderson admits that *Anderson II* and this case "may" involve the same parties and their privies.  (Doc. No. 20 at 12.) The third element of *res judicata* is satisfied.

As for the fourth element of *res judicata*, the grounds and claims for relief that were asserted in *Anderson II* are reasserted in this case. Anderson does add a claim here that he is entitled to a new trial on grounds that Mizer allegedly failed to adequately represent him in his appeals before the military courts. *Res judicata* "bars the filing of claims [that] ... could have been raised in an earlier proceeding." *Ragsdale*, 193 F.3d at 1238. Respondents argue that Anderson's ineffectual assistance claim *could* have been raised before the court in *Anderson II*. Anderson makes no meaningful[18] effort to counter Respondents'

---

[18] In his brief in response to the motion to dismiss, Anderson seems to shift his alleged grounds for relief. "[I]t is well-established that a party cannot amend his or her complaint via legal argument in a response brief." *Sticher v. Indymac Fin. Servs., Inc.*, No. 1:13-CV-3961-RLV, 2014 WL 12284025, at *1 (N.D. Ga. Mar. 7, 2014). Any such amendment or attempt to raise new arguments is futile anyway. Specifically, Anderson appears to expand his grounds for seeking a new trial on the following basis: "The issues presented to this [c]ourt are based on actions and conduct from the US Attorney's office who misrepresented themselves in the [United States District Court for the Eastern District of Virginia], thus, the 'substance of the actions' is not the same here and *stare decisis* is not binding." (Doc. No. 20 at 14.) He further contends: "Respondents don't even attempt to refute that claims that the Respondents disingenuously misrepresented themselves in the [United States District Court for the Eastern District of Virginia], only focusing on a procedural loophole to avoid them from being held accountable." (*Id*. (sic).) Again, this court does not have jurisdiction to review the proceedings, judgments, and orders of the district and appellate courts in *Anderson*

demonstration that he could have raised the ineffective assistance claim in *Anderson II*. In fact, in his own petition, Anderson asserts that he "questioned [Mizer's] effectiveness" during his appeal in the military proceedings, and the United States Court of Appeals for the Armed Forces "immediately" assigned new counsel. (Doc. No. 1 at 27; *see also* Doc. 1-7, Doc. No. 1-8.) Therefore, by his own admission, his ineffective assistance claim existed—and he knew about it—well before he filed his petition in *Anderson II*. His court martial proceedings had concluded long before then. Thus, as with the first three elements of *res judicata*, the fourth and final element is satisfied. *See Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1377 (11th Cir. 2011) ("A new claim is barred by *res judicata* if it is based on a legal theory that was or could have been used in the prior action."); *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir. 2001) (["F]or *res judicata* purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted ... in the earlier action.").

Therefore, Anderson's claims against the Secretary of the Air Force are due to be dismissed with prejudice on grounds of *res judicata*.

## V.    CONCLUSION

Accordingly, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that

1.    Respondents' Motion to Dismiss (Doc. No. 16) be GRANTED.

---

*II. Campbell*, 2022 WL 1673113, at *2. To the extent Anderson is attempting to seek such review, the court cannot entertain his arguments for lack of jurisdiction.

2.     Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the following Respondents be DISMISSED from this action: (1) Lieutenant General Charles L. Plummer, Judge Advocate General of the United States Air Force; (2) Lieutenant General Mark C. Nowland, Deputy Chief of Staff for Operations, Plans, and Requirements United States Air Force; and (3) Brian L. Mizer, Senior Appellate Defense Attorney.

3.     This action be DISMISSED with prejudice.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **March 13, 2024**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

DONE this 28th day of February, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE